IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ACCENTURE LLP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 1:17-CV-1013-SS |
| MARC A. BOUDRIA, ROSS A. MCINTYRE, | § | |
| MATTHEW L. MURRAY, and JOHN J. | § | |
| TODOR, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Marc Boudria, Ross McIntyre, Matthew Murray, and John Todor ("Defendants") hereby file this Partial Motion to Dismiss the Complaint (the "Complaint") of Plaintiff Accenture LLP ("Plaintiff" or "Accenture").

## I.    INTRODUCTION

1.    In this case, Plaintiff has sued Defendants for the alleged misappropriation of trade secrets in violation of the Defend Trade Secrets Act ("DTSA") and Texas Uniform Trade Secret Act ("TUTSA"), breach of contract with respect to Intellectual Property Agreements and Conditions of Employment Agreements, breach of fiduciary duty, and civil conspiracy.

2.    As explained below, Plaintiff's claims against Defendants under the TUTSA and the DTSA (Counts One and Two) fail because the retention of properly acquired trade secrets by employees (and former employees) does not violate either statute.

3.      Further, Plaintiff's common law claim for breach of fiduciary duty (Count Five) fails as a matter of law.

4.      Finally, Plaintiff's conspiracy claim (Count Six) fails as a matter of law because there is no such cause of action under Texas law.

## II.      STANDARD

5.      To survive a Rule 12(b)(6) motion, a plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the Court must generally accept as true all factual allegations contained within the complaint, "that tenet is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678.

## III.      ARGUMENT

**(A)      Counts One and Two: Misappropriation of Trade Secrets in Violation of DTSA and TUTSA**

6.      In Count One and Two of the Complaint, Plaintiff alleges that Defendants have improperly acquired, remain in possession of, used, and disclosed certain confidential and proprietary information of Accenture which constitute "trade secrets." *See Complaint* ¶¶ 129, 140. These claims fail as a matter of law.

7.      First, to the extent that Plaintiff alleges that Defendants "improperly acquired" Plaintiff's trade secrets, there are no facts pled to support this allegation. It is a conclusory allegation unsupported by any facts.[1]

---

[1]      Plaintiff indeed alleges that it willingly gave this information to Defendants in the course of their employment, thus conceding it was obtained properly. *See, e.g., Complaint* ¶ 42 ("Defendants were entrusted with significant amounts of Accenture confidential, proprietary, and trade secret information….").

8.      Likewise, there is not one specific factual allegation that any Defendant has actually used any of Accenture's alleged trade secrets. The Complaint makes conclusory allegations such as "Defendants … are utilizing and exploiting Accenture's [unnamed] confidential, proprietary, and trade secret information…." *Complaint* ¶ 115. Or, "Upon information and belief, Todor [asked Accenture, while employed, for a report relating to Accenture clients] with the intention of providing this list to HyperGiant and has in fact done so." *See Complaint* ¶ 116.

9.      The only actual, factual allegation that Defendants have somehow violated the TUTSA is by "remain[ing] in possession" of Accenture's confidential information, which fails as a matter of law. The Texas Uniform Trade Secrets Act is not violated when a former employee retains trade secrets he properly acquired from his employer. TUTSA defines "misappropriation" as:

> (A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
> (B) disclosure or use of a trade secret of another without express or implied consent by a person who:
>> (i) used improper means to acquire knowledge of the trade secret;
>> (ii) at the time of disclosure or use, knew or had reason to know that the person's knowledge of the trade secret was:
>>> (a) derived from or through a person who had utilized improper means to acquire it;
>>> (b) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
>>> (c) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
>> (iii) before a material change of the person's position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

TEX. CIV. PRAC. & REM. CODE § 134A.002(3).

10.      Notably, the retention of previously properly acquired trade secrets is **not** misappropriation. *See id*. In *Lifesize, Inc. v. Chimene*, the plaintiff, the former employer of

defendant, alleged the defendant "acquired its trade secrets through improper means when he retained his company-issued laptop and engineering notebooks." *Lifesize, Inc. v. Chimene*, No. 1:16-CV-1109-RP, 2017 WL 1532609, *8 (W.D. Tex. Austin Division, Apr. 26, 2017). The court disagreed, siding with the former employee, and found that "rather, his initial access to the trade secrets at issue, as well as his possession of the laptop and engineering notebooks containing them, were by permission of his employer." *Id.*

11.     Furthermore, because the federal Defend Trade Secrets Act's definitions of "misappropriation" and "improper means" are identical to TUTSA "in all respects material to the analysis here," the mere retention of properly acquired trade secrets does not constitute misappropriation under the DTSA either. *See id.* at n.4. This Count should be dismissed as well because there are no facts to pled to support Plaintiff's claim that Defendants improperly acquired any trade secret, and as a matter of law, the mere retention of properly acquired trade secrets is not misappropriation. *See Lifesize*, 2017 WL 1532609, *8.

**(B)     Count Five: Breach of Fiduciary Duties**

12.     In Count Five, Plaintiff alleges that Defendants breached their fiduciary duties to Accenture by doing four things: (a) taking, retaining, and disclosing Accenture's confidential information; (b) preparing to divert Accenture clients and business to a business competitive with Accenture; (c) soliciting, encouraging, or inducing Accenture employees to terminate their employment with Accenture in order to join a competing business; and (d) performing services on behalf of a competing entity while still employed by Accenture and using Accenture's resources to do so. *Complaint* ¶ 173. With regard to each of the four allegations, Plaintiff fails to state a claim for breach of fiduciary duty as a matter of law, and the claims should be dismissed.

**Subsection (a): Taking, Retaining, and Disclosing Accenture's Confidential Information**

13.    In Count Two of the Complaint, Plaintiff alleges that Defendants misappropriated its "trade secrets" in violation of the Texas Uniform Trade Secrets Act – trade secrets which Plaintiff define as its "source code, product development plans, product prototypes, pricing information, and client proposals." *Complaint* ¶ 140.

14.    At the same time, in Count Five, with respect to its breach of fiduciary duty claim, Plaintiff alleges that Defendants owed Plaintiff fiduciary duties and breached their fiduciary duties by "taking, retaining, and disclosing Accenture's confidential information . . ." *Complaint* ¶ 173(a).

15.    TUTSA applies to all claims under Texas law that arise from allegations that a defendant has misappropriated any of the plaintiff's "trade secrets." TUTSA defines "trade secrets" as "information, including a formula, pattern, compilation, program, device, method, technique, process, financial data, or list of actual or potential customers or suppliers, that: (A) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (B) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." TEX. CIV. PRAC. & REM. CODE § 134A.002(6).

16.    By its express terms, TUTSA "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." TEX. CIV. PRAC. & REM. CODE § 134.007(a). The only exceptions to TUTSA's preemption are for (1) contract claims, (2) civil remedies not based on trade secrets, and (3) criminal remedies. TEX. CIV. PRAC. & REM. CODE § 134.007(b).

17. Given that Subsection (a) of Plaintiff's common-law breach of fiduciary duty claim in Count Five is based on the alleged misappropriation of Plaintiff's alleged "confidential information," that claim is preempted by TUTSA and should be dismissed. *See* TEX. CIV. PRAC. & REM. CODE § 134.007(a); *Lifesize*, 2017 WL 1532609, at \*12 (conversion and theft claims based on alleged theft and conversion of trade secrets preempted by TUTSA).

**Subsection (b): Preparing to Divert Accenture Clients and Business**

18. The second prong of Plaintiff's breach of fiduciary duty claim is the allegation that Defendants breached their fiduciary duties to Accenture by "preparing to divert Accenture clients and business to a business competitive with that of Accenture . . ." *Complaint* ¶ 173(b). This claim also fails as a matter of law, for two reasons.

**(1)    It is not a breach of fiduciary duty to make plans to formulate a competing business.**

19. First, it is well-settled under Texas law that an at-will employee, like each Defendant, "may properly plan to go into competition with his employer and may take active steps to do so while still employed." *Wooters v. Unitech Int'l, Inc.*, 513 S.W.3d 754, 763 (Houston [1st Dist.] 2017, pet. denied) (quoting *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 201 (Tex. 2002)). "An employee also may use his general skills and knowledge obtained through employment to compete with the former employer." *Id.* (citations omitted). "Thus, an employee's duty to his employee does not require an employee to disclose his plans to compete; he may secretly join with other employees to plan a competing company without violating any duty to his employer." *Id.* (citations omitted); *see also Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 510 (Houston [1st Dist.] 2003, no pet.) (same). These precepts are rooted in "'society's legitimate interest in encouraging competition.'" *Wooters*, 513 S.W.3d at 763 (quoting *Johnson*, 73 S.W.3d at 201).

20.    Courts throughout Texas hold steadfast to these principles of competition. For instance, a court has held that it is not a breach of fiduciary duty for an employee, during the term of his employment, to form a competing business entity, obtain permits for that entity, and obtain insurance for that entity. *See Abetter Trucking*, 113 S.W.3d at 511-512.

21.    Here, Plaintiff alleges that Defendants acted together to form a competing company, HyperGiant. *See Complaint* ¶ 68.[2] Plaintiff alleges that the Defendants had discussions about their desire to leave Accenture and go to a new firm. *See id.* ¶ 69. Plaintiff also alleges that Defendants are now acting together to solicit Accenture clients. *See id.* ¶ 166. Even accepting these allegations as true, Defendants' conduct does not – as a matter of law – constitute a breach of fiduciary duty. *See Wooters*, 513 S.W.3d at 763; *see also Abetter Trucking*, 113 S.W.3d at 511-512.

22.    Furthermore, Plaintiff alleges that Defendants' alleged plans to formulate a competing business and solicit Accenture clients was a breach of Defendants' underlying employment agreements. *See Complaint* ¶¶ 115, 166. Courts have noted that, although, in some cases making plans to create a competing business may constitute a violation of a defendant's contractual duties, it does not – as a matter of law – constitute a breach of fiduciary duties. *See Wooters*, 513 S.W.3d at 763 ("While [Defendants'] formulation of plans to create a competing business may have violated contractual duties that they had assumed by signing noncompetition agreements, *they did not violate their fiduciary duty by formulating plans to compete*.") (emphasis added). *See also Abetter Trucking*, 113 S.W.3d at 510 (an employer who wishes to restrict the competitive activities of an employee "may seek to accomplish that goal through a

---

[2]    For purposes of this motion, Defendants accept all well-pled allegations as true, but Defendants note for the record that none of them were actually involved in forming HyperGiant, and Accenture has alleged no facts to support this claim.

non-competition agreement."). Thus, Defendants' alleged conduct in making plans to form a new business and solicit Accenture clients does not constitute a breach of fiduciary duty as a matter of law, and this claim should be dismissed.

### (2)   Plaintiff's claims are barred by the economic loss rule.

23.     Furthermore, Plaintiff's claims for breach of fiduciary duty in Subsection (b) fail as a matter of law based on operation of the economic loss rule.

24.     The economic loss rule "generally prohibits a plaintiff from using a tort cause of action as a vehicle to impose liability for a claim based in contract." *Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Servs.*, 787 F.3d 716, 725 (5th Cir. 2015). Simply stated, a tort claim will be barred when there would be no factual basis for such claim without the defendant's breach of contract. *Id*. at 726. "Texas law has long distinguished tort liability from contract liability as between the parties to a contract, seeking to avoid the availability of both tort and contract liability for the same conduct and the same kind of harm or loss." *Id*. at 725. "When the injury is only the economic loss to the subject of a contract itself, the action stands in contract alone." *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986); *see also LAN/STV v. Martin Eby Constr. Co.*, 435 S.W.3d 234, 242 n.35 (Tex. 2014) (collecting cases and noting that the Texas Supreme Court has "repeatedly reaffirmed this rule.").

25.     Here, Plaintiff's breach of fiduciary duty claim merely reiterates its claim for breach of contract. As the basis of its fiduciary duty claim in Subsection (b), Plaintiff contends that Defendants "divert[ed] Accenture clients and business to a business competitive with that of Accenture." *Complaint* ¶ 173(b). This claim simply reiterates its breach of contract claim in Count Four (Breach of the Conditions of Employment Agreements), in which Plaintiff alleges that Defendants breached their employment agreements by "soliciting Accenture clients or

prospective clients." *Complaint* ¶ 163; *see also id.* ¶ 46 (alleging that the Conditions of Employment Agreement allegedly breached contained a "one-year client non-solicitation obligation"). Because the same alleged breach of contract underlies Plaintiff's contract and tort-based theories of liability, its claim for breach of fiduciary duty fails as a matter of law. *See Jim Walter Homes*, 711 S.W.2d at 618; *LAN/STV*, 435 S.W.3d at 242 n.35; *Lincoln*, 787 F.3d at 725.

26.     Thus, due to the economic loss rule and the *Wooters* principle that an employee may properly plan to go into competition with his employer, and, in fact, take active steps to do so, Plaintiff's breach of fiduciary duty claim based on the alleged diversion of Accenture clients and business, as alleged in paragraph 173(b) of the Complaint, fails as a matter of law.

**Subsection (c): Soliciting Accenture employees to leave their employment**

27.     The same reasoning also applies to Plaintiff's third basis for its breach of fiduciary duty claim, that Defendants breached their fiduciary duties by "soliciting, encouraging, or inducing Accenture employees to terminate their employment with Accenture in order to join a business competitive with that of Accenture." *Complaint* ¶ 173(c).

28.     As discussed above, "an employee's duty to his employer does not require an employee to disclose his plans to compete," and, in fact, "he may secretly join with other employees to plan a competing company without violating any duty to his employer." *See Wooters,* 513 S.W.3d at 763; *Abetter Trucking*, 113 S.W.3d at 510 (an "employee has no general duty to disclose his plans and may secretly join with other employees in the endeavor without violating any duty to the employer."). Even accepting Plaintiff's allegations as true, it does not constitute a breach of fiduciary duty for Defendants to make plans with other Accenture employees to leave Accenture and join a new business.

29.     Furthermore, Plaintiff alleges that Defendants' "ongoing solicitation of Accenture employees" constituted a "breach [of] their Conditions of Employment Agreements." *See* Complaint ¶ 166(a). Although, as alleged by Plaintiff, soliciting Accenture employees may have constituted a violation of Defendants' **contractual** duties, it did not – as a matter of law – constitute a breach of fiduciary duty. *See Wooters*, 513 S.W.3d at 763; *Abetter Trucking*, 113 S.W.3d at 510. Thus, Plaintiff's breach of fiduciary duty claim fails as a matter of law on this ground alone.

30.     Furthermore, Plaintiff's claim for breach of fiduciary duty in section 173(c) of the Complaint fails as a matter of law based, again, on operation of the economic loss rule. As discussed above, Plaintiff's breach of fiduciary duty claim merely reiterates its claim for breach of contract.

31.     Namely, Plaintiff alleges that Defendants breached their fiduciary duties by "soliciting, encouraging, or inducing Accenture employees to terminate their employment with Accenture in order to join a business competitive with that of Accenture." *Complaint* ¶ 173(c). This claim simply reiterates Plaintiff's breach of contract claim in Count Four, in which Plaintiff alleges that Defendants "breach[ed] their Conditions of Employment Agreements" by "taking part in the ongoing solicitation of Accenture employees." *Complaint* ¶ 166(a); *see also id*. ¶ 50 (alleging that the employment agreements allegedly breached contained a "one-year employee non-solicitation obligation"). Because the same alleged breach of contract underlies Plaintiff's contract and tort-based theories of liability, its claim for breach of fiduciary duty fails as a matter of law. *See Jim Walter Homes*, 711 S.W.2d at 618; *LAN/STV*, 435 S.W.3d at 242 n.35; *Lincoln*, 787 F.3d at 725.

32.     Thus, due to the economic loss rule and the *Wooters* principle that an employee may "secretly join with other employees to plan a competing company without violating any duty to his employer," Plaintiff's breach of fiduciary duty claim based on the alleged solicitation of Accenture employees, as alleged in paragraph 173(c) of the Complaint, fails as a matter of law.

**Subsection (d): Performing services on behalf of a competing entity while employed by Accenture.**

33.     In the final prong of Plaintiff's claim for breach of fiduciary duty, Plaintiff alleges that Defendants breached their fiduciary duties by "performing services on behalf of a competing entity while employed by Accenture, including using Accenture's resources in doing so." *Complaint* ¶ 173(d).

34.     This claim fails based on operation of the economic loss rule. As discussed above, the economic loss rule generally prohibits a plaintiff from using a tort cause of action as a vehicle to impose liability for a claim based in contract. *Lincoln Gen. Ins.*, 787 F.3d at 725. And, "when determining the scope of an agent's fiduciary duty to his or her principal," one looks to "not only the nature and purpose of the relationship, but also agreements between the agent and principal." *Nat'l Plan Adm'rs, Inc. v. Nat'l Health Ins. Co.*, 235 S.W.3d 695, 700 (Tex. 2007).

35.     Here, Plaintiff alleges that the Defendants executed various agreements that defined the scope of their duties. For instance, Plaintiff alleges that Defendants Marc Boudria, Ross McIntyre, and Matthew Murray executed Conditions of Employment Agreements that contained certain restrictions on their actions, such as preventing them from soliciting Accenture clients or employees, and from disclosing "confidential, privileged, or proprietary information or property of Accenture of its clients." *Complaint* ¶¶ 45-48. Further, Plaintiff alleges that Defendant John Todor executed a Conditions of Employment Agreement that contained a one-

year client non-solicitation and employee non-solicitation agreement as well. *Complaint* ¶¶ 49-50.

36.     Plaintiff also alleges that Boudria, McIntyre, and Murray "agreed to further non-disclosure restrictions" by signing Intellectual Property Agreements. *Complaint* ¶ 51. Plaintiff alleges that Todor executed an Intellectual Property Agreement with similar restrictions as well. *Complaint* ¶ 52.

37.     The scope of the Defendants' duties to Accenture were governed by these contracts between Defendants and Accenture. *See Nat'l Plan Adm'rs*, 235 S.W.3d at 700. Accepting Plaintiff's allegations as true, although Defendants may have violated contractual duties that defined the scope of their relationship, they did not violate their fiduciary duties by engaging in such conduct. *See Lincoln*, 787 F.3d at 725 (the economic loss rule prohibits a plaintiff from using a tort cause of action as a vehicle to impose liability for a claim based in contract); *Jim Walter Homes*, 711 S.W.2d at 618.

**(C)     Count Six: Civil Conspiracy**

38.     In Count Six of Plaintiff's Complaint, Plaintiff alleges that Defendants committed a civil conspiracy by "knowingly and intentionally act[ing] together" to misappropriate Accenture's confidential information and solicit Accenture employees and clients. *See Complaint* ¶¶ 178-179.

39.     This claim fails as a matter of law because a civil conspiracy is not a cause of action under Texas law.  *Hart v. Moore*, 952 S.W.2d 90, 98 (Tex.App.—Amarillo 1997, pet. denied). Texas law only recognizes conspiracy as a means to create joint and several liability if the underlying cause of action is a tort. *See Deaton v. United Mobile Networks, L.P.*, 926 S.W.2d 756, 759-60 (Tex.App.—Texarkana 1996), *rev'd in part on other grounds*, 939 S.W.2d 146

(Tex. 1997); *see also Carroll v. Timmers Chevrolet*, 592 S.W.2d 922, 925–26 (Tex. 1979). Here, Plaintiff's only tort claim – breach of fiduciary duty – is displaced by either TUTSA or the parties' contracts, as discussed above. As there cannot be conspiracy to breach a contract, Plaintiff's conspiracy claim fails as a matter of law. *See Grizzle v. Tex. Commerce Bank, N.A.*, 38 S.W.3d 265, 285 (Tex.App.—Dallas 2001), *rev'd in part on other grounds*, 96 S.W.3d 240 (Tex. 2002); *Deaton*, 926 S.W.2d at 760-61.

## REQUEST FOR RELIEF

For these reasons, Defendants request that the Court dismiss Counts One, Two, Five, and Six of Plaintiff's Complaint and award Defendants all other relief that the Court deems just and proper.

Respectfully Submitted,

BY: ___ /s/ *Michael J. Golden*
Michael J. Golden
State Bar. No. 24032234

BOULETTE GOLDEN & MARIN L.L.P.
2801 Via Fortuna, Suite 530
Austin, TX 78746
512.732.8902
512.732.8905 (facsimile)
mike@boulettegolden.com

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing has been served upon all counsel of record via the Court's ECF system on this 14th day of November 2017 as follows:

Benjamin M. Ostrander (*admitted pro hac vice)*
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL 60601
312.558.5600
312.558.5700 – facsimile

Daniel J. Fazio (*admitted pro hac vice)*
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL 60601
312.558.5600
312.558.5700 – facsimile

Michael P. Roche (*admitted pro hac vice)*
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL 60601
312.558.5600
312.558.5700 – facsimile

Sheryl A. Falk (*admitted pro hac vice)*
sfalk@winston.com
Winston & Strawn LLP
1111 Louisiana St., 25th Floor
Houston, TX 77002
713.651.2600
713.651.2700 - facsimile

Steven A. Fleckman
fleckman@fleckman.com
Fleckman & McGlynn, PLLC
515 Congress Ave., #1800
Austin, TX 78701-3503
512.476.7900
512.476.7644 – facsimile

Erin C. Villasenor
evillasenor@winston.com
Winston & Strawn LLP
1111 Louisiana St., 25th Floor
Houston, TX 77002
713.651.2600
713.651.2700 - facsimile

ATTORNEYS FOR PLAINTIFFS

  */s/ Michael J. Golden*
Counsel for Defendants