**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| ACCENTURE LLP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:17-cv-01013-SS |
| | ) | |
| MARC A. BOUDRIA; ROSS A. MCINTYRE; | ) | Judge Sam Sparks |
| MATTHEW L. MURRAY; and JOHN J. TODOR, | ) | |
| | ) | Magistrate Judge Mark Lane |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S MOTION TO COMPEL DISCOVERY
RELATING TO DEFENDANTS' SPOLIATION OF EVIDENCE AND
REQUEST FOR EXPEDITED CONSIDERATION OF ITS MOTION TO
CONTINUE <u>THE PRELIMINARY INJUNCTION HEARING PENDING SUCH
DISCOVERY</u>**

Plaintiff Accenture LLP ("Accenture") recently uncovered forensic evidence indicating that at least three of the Defendants deliberately spoliated evidence in the days after the Complaint was filed and the Temporary Restraining Order hearing was held in this matter. On Friday, February 2, Accenture, through its counsel, brought this evidence to the attention of Defendants' counsel; however, Defendants, through their counsel, did not agree to discovery into the nature and scope of Defendants' spoliation, thus necessitating the instant request for immediate court intervention.

Accenture, pursuant to Rules 26, 34, and 37 of the Federal Rules of Civil Procedure, hereby requests that the Court enter an order: (i) compelling Defendants to immediately produce to Accenture for forensic inspection the images of Defendants' electronic storage devices and cloud storage accounts that are currently in possession of Defendants' forensics expert; (ii) ordering Defendants to sit for continued depositions so that Accenture may examine Defendants with respect to their spoliation and preservation efforts; (iii) compelling Defendants to produce all

1

devices and accounts that they have failed to turn over to their forensics expert for immediate forensic inspection; and (iv) continuing the preliminary injunction hearing currently scheduled for February 20, 2018, pending the completion of the foregoing discovery and forensic analysis.[1] **Because the Preliminary Injunction hearing is currently scheduled to take place on February 20, Accenture respectfully requests expedited consideration of its request to continue the hearing pending completion of the discovery sought herein.** In support of this motion, Accenture states as follows:

<u>Relevant Factual and Procedural Background</u>

A. **Accenture Initiates Action After Defendants Steal its Confidential, Proprietary, and Trade Secret Information**

On October 24, 2017, Accenture brought this action for relief from a clandestine campaign of unfair competition by Defendants who, in the days before abruptly resigning from Accenture, *en masse*, to join a competitive "stealth startup," HyperGiant LLC, used various external devices and/or cloud storage accounts, secretly and without authorization, to copy, access, and remove copious amounts of Accenture's confidential, proprietary, and trade secret materials from Accenture's computer systems.  R. 1, ¶¶ 95–114.  This stolen information included entire backups of Accenture computers, which contained artificial intelligence source code, artificial intelligence training files, customer information and preferences, client engagements, and other strategic business information. *Id*.

---

[1]     The preliminary injunction hearing has been referred to Magistrate Judge Lane. R. 49.  All parties have since consented to referring this matter in its entirety to a Magistrate Judge.  R. 57; R. 60.  Accenture similarly has no objection to the referral of the instant motion to a Magistrate Judge.

### B. Defendants' Duties to Preserve Evidence

Immediately after the suit was filed on October 24, 2017, Accenture emailed each Defendant a copy of the Complaint.  In part because Accenture had already uncovered evidence of Defendants engaging in the coordinated destruction of relevant evidence, Accenture also provided each Defendant a preservation letter detailing the Defendants' duties to preserve evidence.  *See* Composite Exhibit 2.

This Court held a hearing on Accenture's Motion for Temporary Restraining Order ("TRO") on October 25, 2017.  R. 29; R. 58.  At the hearing, the Court was unequivocal in its view that Defendants were under strict duties to preserve, and not to delete, evidence.[2]  R. 58, at 17:3–18.

On the day of the TRO hearing (October 25), the parties submitted to the Court a Consent TRO and Order Allowing Expedited Discovery.  R. 28.  This proposed order contained a number of explicit prohibitions on the destruction or alteration of evidence.  R. 28, ¶¶ (d)–(g).  The Court entered the Consent TRO and Order Allowing Expedited Discovery Order on November 2, 2017, which, in addition to the preservation obligations, required Defendants to produce to a forensic expert for imaging and inspection all electronic storage devices and cloud storage accounts that contain or that at any time contained information relating to Accenture.  R. 31, ¶ (j).

---

[2]    Of course, the duty to preserve material evidence arises when a party knew or should have known that litigation was imminent, and is not dependent upon a court order or letter from counsel.  *See Condrey v. SunTrust Bank of Ga.*, 431 F.3d 191, 203 (5th Cir. 2003).  Defendants' duties to preserve were triggered no later than October 24, 2017, when each Defendant received a copy of the Complaint from Accenture's counsel and were demanded to preserve all evidence.

**C. The Limited Data Produced by Defendants' Forensic Provider Indicates that All Defendants Failed to Comply with the Court's Order to Turn Over Devices and Accounts for Inspection, and that At Least Three Defendants Spoliated Evidence.**

At the Defendants' insistence, the production of Defendants' devices and accounts has, to date, gone through the Defendants' own forensic provider, Flashback Data ("Flashback"). Accenture's forensics provider, G-C Partners, does not have access to the Defendants' actual devices or accounts, or even to the forensic images of the devices. Rather, to date, Flashback has produced to G-C partners file lists, and, more recently, partial activity reports, relating to Defendants' use of the devices and accounts they turned over to Flashback (which, as discussed below, are not even a complete set of the devices and accounts controlled by Defendants).

As set forth in the attached Declaration by Accenture's forensic expert, David Cowen of G-C Partners, due to the limited production of data from Flashback and the fact that G-C Partners does not have access to the actual devices or forensic images of those devices, Accenture's ability to analyze Defendants' electronic storage device and cloud storage activity has been limited. Declaration of David Cowen ("Cowen Decl.") ¶¶ 3, 6–7, 14, 18–20, attached hereto as Exhibit 1. Yet, even with the limited information made available to Accenture to date, there is evidence that at least three of the Defendants committed intentional spoliation of evidence in the days after the Complaint was filed and the TRO hearing was held. Cowen Decl. ¶¶ 6–8, 10–11, 14–15, 18. Moreover, there is evidence that all four Defendants failed to turn over all of the devices and accounts they were required to submit under the Court's TRO Order:

### 1. Defendant Matthew Murray

Mr. Murray had CCleaner, a sophisticated, anti-forensic, commercial wiping software, on both of the Mac computers he turned over to Flashback. *Id.* ¶¶ 7–8. CCleaner can be used to securely wipe log files, internet history, recently used files, temporary files created by many common applications, and system memory dumps. *Id.* ¶ 7. In other words, CCleaner removes

many artifacts of a user's usage of a computer and hinders the ability of a forensic examiner to recover this evidence. *Id.*

G-C Partners' analysis of the data made available to it to date indicates that Mr. Murray updated and likely initiated CCleaner to run on one of his computers on or about October 28, 2017, three days after the TRO hearing was held. *Id.* ¶ 8. By its nature, CCleaner erases evidence of its use, and, given the limited forensic artifacts that Flashback has to date made available to Accenture, further forensic analysis of Mr. Murray's device is required to attempt to uncover the full scope of Mr. Murray's use of CCleaner.[3] *Id.* ¶¶ 7–8.

G-C Partners' analysis of the data made available to it to date also indicates that on or about October 29, 2017, Mr. Murray deleted a Discord file application;[4] deleted hundreds of GitHub files[5]; and deleted the cache from his mail client, Polymail. *Id.* ¶¶ 6–7.

All of these activities, individually and in the aggregate, may have had the effect of erasing evidence of Mr. Murray's communications, use and transmission of Accenture data, and other computer activity that had existed on his computer as of the date the Complaint was filed. *Id.* ¶¶ 18–19.

In addition to Mr. Murray's deletion activities, he has also refused to produce for forensic inspection his GitHub account, DropBox account, mattanimation@gmail.com email account, his

---

[3]    Courts, including this Court, regularly find a preservation order to have been violated and/or spoliation of evidence to have occurred as a result of a litigant's use of CCleaner on a computer. *See, e.g.*, *F & J Samame, Inc. v. Arco Iris Ice Cream*, 2015 WL 4068575, at *2 n.11, at *6 (W.D. Tex. July 2, 2015); *1-800-East West Mortg. Co. v. Bournazian*, 2010 WL 3038962 (Mass. Super. July 18, 2010); *Barrette Outdoor Living, Inc. v. Michigan Resin Representatives*, 2013 WL 3983230 (E.D. Mich. Aug. 1, 2013).

[4]    Discord was the private communications channel used by Defendants and their co-conspirators to secretly discuss their defections from Accenture, to circulate repurposed Accenture work product, and to discuss copying of Accenture information. R. ¶¶ 82–84, 89–91.

[5]    Github is an application used to store and to transmit source code that Murray used for his Accenture work.

Google drive account, or his USB20FD external storage device that was connected to his Accenture computer and that appears to have contained Accenture data. *Id.* ¶ 9.

### 2. Defendant Ross McIntyre

G-C Partners' analysis of the data made available to it to date indicates that on October 29, 2017, Mr. McIntyre updated and initiated CleanMyMac to run on his Mac computer. *Id.* ¶ 10. CleanMyMac is a commercial data eradication program that can be used, among other ways, to erase download history, communications, and other internet activity. *Id.* On or about October 29, 2017, Mr. McIntyre also deleted thousands of files from his Mac Computer, including his Adobe Captivate application and its related files. *Id.* ¶ 11.

Despite numerous requests by Accenture (and Mr. McIntyre's obligations under the parties' agreed forensic protocol), Mr. McIntyre has continually refused to produce a USB device (SPUFDU3) for forensic inspection. *Id.* ¶ 13. G-C Partners' analysis of the data made available to it to date indicates that this device was connected to one of Mr. McIntyre's personal computers, and an Accenture client presentation was accessed on it after Mr. McIntyre's last day at Accenture. *Id.*

### 3. Defendant John Todor

G-C Partners' analysis of the data made available to it to date indicates that on or about October 29, 2017, Mr. Todor cleared his Chrome browser data from his Mac computer. *Id.* ¶ 14. His actions in this regard caused, for example, the deletion of evidence of his internet activity that existed on his computer as of that date, including communications and any access to or use of GoogleDrive, Dropbox, web-based mail, and/or any other internet-based method that would have allowed Mr. Todor to transmit some or all of the extraordinary amount of Accenture confidential information we now know was on that computer as of that date. *Id.*

Nor, despite numerous requests from Accenture, has Mr. Todor produced for forensic inspection his DropBox account, an external storage device named My Passport for Mac, or an external storage device without a volume name. *Id.* ¶ 15. The My Passport for Mac device contained a backup of an Accenture system, and the device without a volume name contained Accenture project files. *Id.* Both devices were connected to Mr. Todor's Accenture computer prior to his resignation. *Id.*

### 4. Defendant Marc Boudria

Mr. Boudria did not turn any computer into Flashback whatsoever. And while he testified that his home personal computer did not contain Accenture information on it, the external drive that Mr. Boudria did turn into Flashback shows that it was plugged into a Mac computer on September 26, 2017, and accessed Accenture data. *Id.* ¶ 16. This is a very strong indication that Mr. Boudria's personal computer had Accenture information on it as of the date the Complaint was filed. *Id.* Nor has Mr. Boudria turned over the following devices and/or accounts for forensic inspection, despite numerous requests from Accenture that he do so: (i) email account nautreluvr@hotmail.com, (ii) email account abstractamcr@gmail.com, (iii) his GitHub account, (iv) his GoogleDrive account, (v) a Kingston External Storage Device, and (vi) a USB20FD External Storage Device. *Id.* ¶ 17. The two external devices had been connected to Mr. Boudria's Accenture computer. *Id.*

### D. Defendants Reject Accenture's Meet-and-Confer Efforts

If confirmed through full forensic analysis, the Defendants' actions, as outlined above, not only violate their obligations to preserve evidence and call into serious question the veracity of their sworn interrogatory responses relating to their preservation of evidence, they also undermine the credibility of their respective denials of the use and transmission of Accenture information and

give Accenture serious concern that its information that Defendants' admit they stole is not fully accounted for.

The foregoing conduct is, unfortunately, consistent with Defendants' pre-litigation attempts to conceal their actions by using secret communication platforms and code names, destruction of evidence of their pre-resignation communications under an order of instruction from a principal of HyperGiant, and the mass deletion of thousands of files from Accenture computers. R. 1. ¶¶ 82–83, 89–91, 97–98, 106, 110–11.

On January 30, 2018, sent correspondence, and on February 2 Accenture sent further correspondence and conferred in good faith telephonically with Defendants in an effort to secure the requested information, devices, accounts, and depositions without Court action. Counsel for Defendants did not agree to Accenture's requests.[6]

### Argument

**A. This Court Should Exercise its Discretion to Compel Defendants' Immediate Cooperation with Discovery into Their Spoliation and to Continue the Preliminary Injunction Hearing Pending Such Discovery.**

It is axiomatic that this Court has broad discretion in scheduling, managing its docket, and in all discovery matters. *LegacyRG, Inc. v. Harter*, 705 F. App'x 223, 231 (5th Cir. 2017); *McClain v. Lufkin Industries. Inc.*, 519 F.3d 264, 282 (5th Cir. 2008); *see also Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016) ("[D]istrict courts have the inherent authority to manage their dockets.").

---

[6] Copies of written correspondence sent to counsel for Defendants regarding these matters on January 30 and February 2 are attached as Composite Exhibit 3. In addition, counsel for Accenture met and conferred telephonically with counsel for Defendants on February 2, 2018, during which time counsel for Defendants indicated they did not agree to voluntarily provide Accenture any of the relief requested herein.

The exercise of the Court's discretion is particularly warranted where, as here, the conduct at issue is spoliation, which threatens the very integrity of the judicial process and merits the most serious penalties, including, potentially, terminating sanctions. *See Union Pump Co. v. Centrifugal Tech. Inc.*, 404 F. App'x 899, 906 (5th Cir. 2010) ("Spoliation is a serious offense and a party's intentional destruction of relevant evidence threatens the sanctity and spirit of the judicial process."); *see also Moore v. CITGO Ref. & Chemicals Co., L.P*, 735 F.3d 309, 315–16 (5th Cir. 2013) (affirming dismissal where plaintiffs violated discovery orders by, among other things, deleting and failing to preserve emails); *Arista Records, L.L.C. v. Tschirhart*, 241 F.R.D. 462, 466 (W.D. Tex. 2006) (entering default judgment against a defendant that used disk-wiping software to destroy electronic information).

In addition to threatening the integrity of the judicial process, it has long been recognized that spoliation "may significantly hamper the nonspoliating party's ability to present its claims ... and can undermine the truth-seeking function of the judicial system and the adjudicatory process." *Castano v. Wal-Mart Stores Texas, LLC*, 2015 WL 2180573, at *2 (S.D. Tex. May 7, 2015) (quotation omitted).

As detailed above and in the attached declaration of David Cowen, the limited forensic data and information made available to Accenture to date, regarding Defendants' use of their respective devices and accounts, indicates that at least three Defendants likely intentionally spoliated relevant evidence in this matter and that all Defendants appear to have violated the Court's Order with respect to which devices and accounts they have turned over to their forensics expert. Cowen Decl. ¶¶ 6–8, 10–11, 14–15, 18. Under these circumstances, Accenture is entitled to fully examine the scope of Defendants' spoliation and withholding of evidence by examining the relevant devices and accounts itself and by having Defendants sit for their continued

depositions, all of which Defendants are adamantly refusing to allow.  *See F & J Samame, Inc. v. Arco Iris Ice Cream*, 2015 WL 4068575, at \*2 n.11, at \*6 (W.D. Tex. July 2, 2015) (granting plaintiff leave to re-depose defendant's employee after it was discovered that the employee intentionally destroyed relevant data by, among other things, deploying CCleaner to wipe his laptop drive; noting that CCleaner can be set to wipe free areas of a hard drive so that deleted files cannot be recovered; awarding plaintiff its attorneys' fees incurred preparing motion for sanctions and motion to compel and by taking defendant's depositions).

It cannot be disputed that the scope and severity of Defendants' spoliation and withholding of evidence is highly relevant to the questions of whether and to what extent Defendants used and transmitted Accenture information, as well as to their credibility, all of which in turn will inform the appropriate scope and nature of injunctive relief.  Defendants' wrongdoing and refusal to cooperate in discovery thus thwarts Accenture's ability to proceed with the preliminary injunction hearing and to prosecute its claims against the Defendants.

The preliminary injunction hearing is currently scheduled for February 20, 2018.  R. 54. Counsel for Defendants has indicated that he is unavailable and on vacation from February 8 to February 14, and depositions of Accenture employees have been noticed for February 15 and 16. Even if the Court were to immediately compel the production of information and devices and re-open Defendants' depositions, such discovery simply cannot be completed before the date currently set for the preliminary injunction hearing.

WHEREFORE, for the reasons set forth above, Accenture respectfully requests that this Court issue an Order:

(1)     compelling Defendants to immediately produce to Accenture for forensic inspection the images of Defendants' electronic storage devices and cloud storage accounts that are currently in possession of Defendants' forensics expert;

(2)     ordering Defendants to sit for continued depositions so that Accenture may examine Defendants with respect to their spoliation and preservation efforts;

(3)     compelling Defendants to produce all devices and accounts that they have failed to turn over to their forensics expert for immediate forensic inspection;

(4)     continuing the preliminary injunction hearing currently scheduled for February 20, 2018, pending the completion of the foregoing discovery and forensic analysis; and

(5)     granting such further relief as the Court deems appropriate.


Dated: February 6, 2018                              Respectfully submitted,

                                                     ACCENTURE LLP

                                                     By:/s/ Michael P. Roche_____
                                                     One of Its Attorneys

Steve Fleckman
FLECKMAN & MCGLYNN, PLLC
515 Congress Avenue, Suite 1800
Austin, TX 78701
Telephone: (512) 476-7900
Facsimile: (512) 476-7644
fleckman@fleckman.com

Sheryl A. Falk
Erin C. Villaseñor
WINSTON & STRAWN LLP
1111 Louisiana, 25th Floor
Houston, TX 77002
Telephone: (713) 651-2600
Facsimile: (713) 651-2700
sfalk@wintson.com

11

evillasenor@winston.com

Michael P. Roche (admitted *pro hac vice*)
Daniel J. Fazio (admitted *pro hac vice*)
Benjamin M. Ostrander (admitted *pro hac vice*)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL  60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
mroche@winston.com
dfazio@winston.com
bostrander@winston.com

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that a true and correct copy of the foregoing has been served upon counsel of record for Defendants via the Court's ECF system on this 6th day of February 2018 as follows:

Michael J. Golden
BOULETTE GOLDEN & MARIN LLP
2801 Via Fortuna, Suite 530
Austin, TX  78746
mike@boulettegolden.com


By: /s/ Michael P. Roche
Counsel for Plaintiff